IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-03281 |
| | ) | |
| JARVIS TEZENO, Sr., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PERMANENT INJUNCTION**

The United States brings this civil action under §§ 7402(a), 7407, and 7408 of the Internal Revenue Code (26 U.S.C.) to permanently enjoin Defendant, Jarvis Tezeno, Sr. ("Tezeno"), and anyone else acting in concert or participation with him from, among other things, acting as a federal tax return preparer and from engaging in related activities. In support of this action, the United States alleges as follows.

**Jurisdiction and Venue**

1. This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408, and is commenced at the direction of the Attorney General of the United States.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402(a).

3. Venue is proper in this Court under 28 U.S.C. § 1391, and 26 U.S.C. §§ 7407(a) and 7408(a) because Defendant resides in the Southern District of Texas (Houston), and all or a

substantial portion of the tax return preparation and filing activities occurred in this District (Harris County).

**Parties**

4. Plaintiff is the United States of America

5. Tezeno prepares income tax returns for customers. Tezeno may be served at his residence in Houston, Texas.

**Overview of Defendants' Tax-Preparation Practice**

6. Tezeno started his tax preparation career with H&R Block in 1993. Tezeno held employment with H&R Block until 1997 as a tax return preparer and supervisor.

7. Tezeno then formed A.O.N.I.A.P. in 1998 to operate his own tax preparation business. A.O.N.I.A.P. is a sole proprietorship in which Tezeno is the sole tax return preparer.

8. A.O.N.I.A.P. is located at 6550 Maple Ridge St., Houston, Texas 77081.

9. Tezeno applied for, received, and was assigned Electronic Filing Identification Number ("EFIN") EFINXXX069 for A.O.N.I.A.P. However, the I.R.S. expelled this EFIN on August 17, 2018, due to compliance issues.

10. Tezeno applied for, received, and used the Preparer Tax Identification Number ("PTIN") PXXXX6245 to prepare returns until March 5, 2019, when Tezeno allowed his PTIN to expire.

11. However, Tezeno continued to prepare tax returns during the 2019, 2020, 2021, 2022, and 2023 filing seasons.

12. Tezeno continued his tax preparation activity by failing to properly identify himself as the paid preparer on his customers' tax returns for filing seasons 2019 through 2023. Tezeno accomplished this through various methods.

13. Tezeno initially filed a portion of his customers' returns under his expired PTIN PXXXX6245.

14. Tezeno then filed his customers' tax returns by using Intuit Turbo Tax's EFIN's, EFINXXX894 and EFINXXX893, to circumvent detection.

15. Tezeno now prepares his customers' tax returns under the PTINXXXX7449 and EFINXXX469, which were both issued to his son.

16. Tezeno prepared over 1,300 tax returns throughout the 2020, 2021, 2022, and 2023 filing seasons.

17. Tezeno prepares false U.S. Individual Income Tax Returns (Forms 1040, 1040A and 1040EZ) for customers to obtain tax refunds to which the customers are often not entitled. On these returns, Tezeno falsifies or inflates Schedule C business expenses.

18. Tezeno is a "tax return preparer" under 26 U.S.C. § 7701(a)(36), but Tezeno is neither an attorney nor a certified public accountant.

19. Tezeno exhibits a history of filing false returns. Tezeno's conduct is further detailed below.

**Description of Defendant's Unlawful Tax-Preparation Activity**

**Failure to List a Proper PTIN**

20. Tezeno prepares returns without a valid PTIN. Under 26 U.S.C. § 6109(a)(4), the return must contain the identifying number of the tax return preparer required to sign the return. Effective January 1, 2011, tax return preparers must have a PTIN to prepare returns.

21. Tezeno applied for, received, and used PTIN PXXXX6245 to prepare returns until March 5, 2019, when Tezeno allowed this PTIN to expire. However, Tezeno continued to file his customers' tax returns during filing seasons 2020 and 2021, without having a valid PTIN.

22. Customer returns filed by Tezeno listing the expired PTIN PXXXX6245 are as follows:

| PTIN | Filing Season | # Of Returns Filed |
|---|---|---|
| PXXXX6245 | 2021 | 68 |
| PXXXX6245 | 2020 | 570 |

**PTIN Abuse**

23. Section 6109 of the Internal Revenue Code requires return preparers to identify themselves on the returns they prepare for customers by including their PTIN on the return. Return preparers that do not identify themselves on returns they prepare for customers are subject to a penalty under 26 U.S.C. §§ 6695(b), (c). The IRS refers to return preparers that do not identify themselves as "ghost preparers."

24. Tezeno operates as a ghost preparer because he does not identify himself as the return preparer on his customer's returns, and instead utilizes the PTIN assigned to his son.

25. A court can enjoin a return preparer who continually engages in conduct subject to penalty under § 6695 from preparing returns for others. See 26 U.S.C. § 7407. Because Tezeno operates as a ghost preparer, it is extremely difficult for the IRS to identify and detect the full scope of his illicit tax preparation activities. Once detected, it is difficult to quantify exactly how many tax returns Tezeno prepared and filed for his customers.

26. Customer returns filed by Tezeno listing his son's PTIN PXXXX7449 are as follows:

| PTIN | Filing Season | # Of Returns Filed |
|---|---|---|
| PXXXX7449 | 2023 | 290 |

| | | |
|---|---|---|
| PXXXX7449 | 2022 | 333 |

**EFIN Abuse**

27. Tezeno hampers the Internal Revenue Service's ability to administer tax laws by using EFINs that he is not entitled to use. The IRS uses EFINs to monitor and regulate electronic filing of tax returns. Suspension or termination of an EFIN is one of the sanctions the IRS uses to enforce tax laws.

28. Tezeno applied for, received, and was assigned EFINXXX069 for A.O.N.I.A.P. However, the I.R.S. expelled this EFIN on August 17, 2018, due to compliance issues.

29. Tezeno then began using EFINs that the IRS issued to Intuit Turbo Tax. Tezeno is not an owner, operator, or an otherwise authorized individual of Intuit Turbo Tax for purposes of utilizing its EFINs ending in 893 and 894. Tezeno's use of Intuit Turbo Tax's EFINs directly undermines the EFIN system.

30. Tezeno used the following EFINs to file tax returns for customers for filing season 2021, in which each return claimed a refund, as follows:

| | **Returns Filed Per Filing Season** |
|---|---|
| **EFIN Ending In** | **2021** |
| **XXX893** | 11 |
| **XXX894** | 121 |
| **TOTAL RETURNS** | 132 |
| **% With Refunds** | 100% |

**History of Misconduct**

31. Tezeno started a long history of misconduct with the IRS in 2015. During 2015, the IRS assessed I.R.C. § 6694(b) penalties against Tezeno, due to willful and/or reckless understatement of tax of his customer's tax liabilities. The IRS assessed these penalties after investigating customer complaints filed against Tezeno. The complaints revealed that Tezeno fabricated items on his customers' tax returns, withheld customers' refunds, and rerouted customers' refunds into his personal bank account. These penalties are more severe than penalties for return preparers under I.R.C. § 6694(a) which are for merely "unreasonable" positions on returns.

32. In 2017 the IRS assessed an I.R.C. § 6695(g) penalty against Tezeno for failure to be diligent in determining eligibility for certain tax benefits.

33. A summary of the above-referenced penalties is as follows:

| **Year** | **Date Assessed** | **Amount** | **Penalty** |
|---|---|---|---|
| 2011 | 8/31/2015 | $15,000.00 | I.R.C. § 6694(b) |
| 2012 | 8/31/2015 | $95,000.00 | I.R.C. § 6694(b) |
| 2013 | 8/31/2015 | $65,000.00 | I.R.C. § 6694(b) |
| 2015 | 3/20/2017 | $25,250.00 | I.R.C. § 6695(g) |

34. In addition, the IRS Return Preparer Office ("RPO") received several complaints from Tezeno's customers. A summary of the complaints is as follows:

| **Date Received** | **Complaint Listed** |
|---|---|
| 2/19/2013 | Customer claimed that Tezeno added false income and deductions to his return, and that the customer did not authorize Tezeno to file the tax return. |
| 4/4/2013 | Customer claimed that Tezeno withheld the customer's tax refund. |

| | |
|---|---|
| 4/11/2013 | Customer claimed that Tezeno withheld the customer's tax refund. |
| 9/14/2016 | Customer claimed that Tezeno input false information on customer's tax return and refused to provide assistance during an IRS examination. |
| 9/14/2016 | Customer claimed that Tezeno put a false business on customer's tax return. |
| 4/7/2017 | Customer claimed that Tezeno falsified a Schedule C business that generated a loss. |
| 7/28/2020 | Customer claimed that Tezeno withheld the customer's tax refund. |
| 11/1/2021 | Customer claimed that Tezeno failed to file customer's return properly. |
| 7/29/2022 | Customer claimed that Tezeno made errors on customer's tax return. |
| 8/19/2022 | Customer claimed that Tezeno withheld the customer's tax refund and used a different PTIN. |
| 10/4/2022 | Customer claimed that Tezeno failed to file customer's tax return as authorized. |

**Fabricated or Inflated Schedule C Businesses and Expenses**

35. Tezeno has exhibited a consistent pattern of continually and repeatedly preparing federal tax returns that he knows, or should have known, contained fabricated or inflated Schedule C businesses, which were designed to generate sham business expenses and maximize customers' refunds.

36. Tezeno prepared thousands of returns leading up to, and during, the years at issue. A synopsis of the returns prepared by Tezeno is as follows:

a. During 2018, Tezeno prepared 408 returns, of which 389 returns claimed refunds (95%).

b. During 2019, Tezeno prepared 477 returns, of which 459 returns claimed refunds (96%).

c. During 2020, Tezeno prepared 628 returns, of which 583 returns claimed refunds (93%).

d. During 2021, Tezeno prepared 106 returns, of which 95 returns claimed refunds (90%).

e. During 2022, Tezeno prepared 333 returns, of which 319 returns claimed refunds (96%).

f. During 2023, Tezeno prepared 290 returns, of which 289 returns claimed refunds (99%).

37. Tezeno regularly reports fabricated or inflated business expenses on a Form Schedule C – Profit or Loss from Business, attached to his customers' tax returns. Tezeno attaches this form to reduce the customer's taxable income, which in turn, generates an inflated refund. Many of the returns filed by Tezeno claimed business expenses or business income that are entirely fictitious. Tezeno's customers did not inform him that they owned or operated a business, let alone that they incurred the false business expenses or business income reported in their returns. In other instances, when customers did own a Schedule C business, Tezeno inflated his customers' Schedule C business expenses to create losses that would then be deducted against taxable income from other sources.

38. The I.R.S. interviewed a representative sample of Tezeno's customers that reported a Schedule C business and associated expenses. The interviews revealed the following:

a. Interviews of customers whose returns Tezeno prepared in 2020 revealed that 4 out of the 7 customers interviewed (57%) had fabricated or inflated Schedule C items.

b. Interviews of customers whose returns Tezeno prepared in 2021 revealed that 12 out of the 19 customers interviewed (63%) had fabricated or inflated Schedule C items.

c. Interviews of customers whose returns Tezeno prepared in 2022 revealed that 16 out of the 18 customers interviewed (89%) had fabricated or inflated Schedule C items.

d. Interviews of customers whose returns Tezeno prepared in 2023 revealed that 15 out of the 16 customers interviewed (94%) had fabricated or inflated Schedule C items.

Tax Returns Prepared by Tezeno in 2020:

**CUSTOMER 1:**

39. As an example, Tezeno prepared a 2019 tax return for Customer 1. Customer 1 stated that her tax return was prepared by Tezeno. Customer 1 mailed her tax information to her daughter, who then delivered the records to Tezeno. Customer 1 stated that her Forms W-2 and social security card were the only documents provided to Tezeno.

40. Customer 1 did not own or operate a trade or business in 2019, she was not asked by Tezeno if she owned or operated a trade or business during 2019, and she was unaware that Tezeno included a Schedule C showing a net loss of $25,660.00 from a "Caregiver" business as an attachment to her 2019 tax return. Customer 1 paid Tezeno $350.00 for the preparation of her 2019 tax return. Customer 1 received her refund via direct deposit.

**CUSTOMER 2:**

41. Tezeno prepared a 2019 tax return for Customer 2. Customer 2 personally dropped off her tax documents with Tezeno. Customer 2 noted that the only documents provided to Tezeno were Forms W-2.

42. Customer 2 did not own or operate a trade or business in 2019, she was not asked by Tezeno if she owned or operated a trade or business during 2019, and she was unaware that Tezeno included a Schedule C showing a net loss of $44,416.00 from a "Babysitting" business as an attachment to her 2019 tax return. Customer 2 paid Tezeno $350.00 for the preparation of her 2019 tax return. Customer 2 received her refund via a U.S. Treasury check.

**CUSTOMER 3:**

43. Tezeno prepared a 2019 tax return for Customer 3. Customer 3 provided only his driver's license, social security card, utility bill, and Form W-2 to Tezeno.

44. Customer 3 did not own or operate a trade or business in 2019, he was not asked by Tezeno if he owned or operated a trade or business during 2019, and he was unaware that Tezeno included a Schedule C showing a net loss of $27,705.00 from an "Auto Repair" business as an attachment to his 2019 tax return. Customer 3 paid Tezeno $350.00 for the preparation of his 2019 tax return. Customer 3 received his refund via direct deposit.

<u>Tax Returns Prepared by Tezeno in 2021</u>:

**CUSTOMER 4:**

45. Tezeno prepared a 2020 tax return for Customer 4. Customer 4 provided only her driver's license, social security card, insurance documents, and Form W-2 to Tezeno to prepare that return.

46. Customer 4 never provided any supporting documentation for a Schedule C business, she never operated any business in 2020, and her only employment in 2020 was with the Harris County Sheriff's office. However, Tezeno included a Schedule C showing a net loss of $25,875.00 from a "Data Entry" business as an attachment to her 2020 tax return. Customer 4

paid Tezeno $375.00 for the preparation of her 2020 tax return. Customer 4 received her refund via direct deposit.

**CUSTOMER 5:**

47. Tezeno prepared a 2020 tax return for Customer 5. Customer 5 provided only her vehicle registration, home improvement receipts, donation records, Form 1095, and Form W-2 to Tezeno to prepare the return.

48. Customer 5 did not own or operate a trade or business in 2020, she was not asked by Tezeno if she owned or operated a trade or business during 2020, and she was unaware that Tezeno included a Schedule C showing a net loss of $26,154.00 from a "Data Entry" business as an attachment to her 2020 tax return. Customer 5 paid Tezeno $365.00 for the preparation of her 2020 tax return.

Tax Returns Prepared by Tezeno in 2022:

**CUSTOMER 6:**

49. Tezeno prepared a 2021 tax return for Customer 6. Customer 6's Form W-2 and her daughter's school information were the only documents provided to Tezeno.

50. Customer 5 did not own or operate a trade or business in 2021, she was not asked by Tezeno if she owned or operated a trade or business during 2021, and she was unaware that Tezeno included a Schedule C showing a net loss of $65,250.00 from a "Caregiver" business as an attachment to her 2021 tax return. Customer 6 paid Tezeno $360.00 for the preparation of her 2021 tax return. Customer 6 received her refund via direct deposit.

**CUSTOMER 7:**

51. Tezeno prepared a 2021 tax return for Customer 7. The only documents Customer 7 provided to Tezeno to prepare the return were her Form W-2, bank information, driver's license, and childcare information.

52. Customer 7 did not own or operate a trade or business in 2021, she was not asked by Tezeno if she owned or operated a trade or business during 2021, and she was unaware that Tezeno included a Schedule C showing a net loss of $24,081.00 from a "Caregiver" business as an attachment to her 2021 tax return. Customer 7 paid Tezeno $360.00 for the preparation of her 2021 tax return.

Tax Returns Prepared by Tezeno in 2023:

**CUSTOMER 8:**

53. Tezeno prepared a 2022 tax return for Customer 8. Customer 8 provided only his driver's license, bank account information, mortgage interest documents, dependent information, housing information, and Form W-2 to Tezeno to prepare the return.

54. Customer 8 never provided any supporting documentation for a Schedule C business, he never operated the purported business listed on his 2022 Schedule C, and he was employed full-time as a firefighter during tax year 2022. However, Tezeno included a Schedule C showing a net loss of $33,945.00 for a "Security" business as an attachment to Customer 8's 2022 tax return. Customer 8 paid Tezeno $350.00 for the preparation of his 2022 tax return. Customer 8 received his refund via direct deposit.

**CUSTOMER 9:**

55. Tezeno prepared a 2022 tax return for Customer 9. Customer 9 provided only his Form W-2 and driver's license to Tezeno to prepare the return.

56. Customer 9 did not own or operate a trade or business in 2022, he was not asked by Tezeno if he owned or operated a trade or business during 2022, and he was unaware that Tezeno included a Schedule C showing a net loss of $4,627.00 for an "Auto Repair" business as an attachment to his 2022 tax return. Customer 9 paid Tezeno $200.00 for the preparation of his 2022 tax return.

**Harm Caused by Defendants' Unlawful Tax-Preparation Activities**

57. Tezeno's customers are harmed by his behavior because they pay Tezeno to prepare proper tax returns, and he does not do so. Because Tezeno understates many of his customers' federal income tax liabilities, those customers may face assessments for tax deficiencies, interest, and penalties.

58. Tezeno's conduct also harms the United States because his customer's understated tax liabilities result in lost tax revenue. **The I.R.S. estimates the tax losses caused by Tezeno to be close to $3,993,018.08 for the 2020, 2021, 2022, and 2023 filing seasons.** The IRS computed this number by first estimating the percentage of misstated returns based on the number of interviewed customers that required changes to their returns divided by the total number of customers interviewed. The I.R.S. then multiplied that misstatement percentage by the total number of returns prepared by Tezeno with a Schedule C for a given year to get the estimated number of incorrect returns. The final step was to multiply the number of estimated incorrect returns by the average misstatement to get the total estimated harm to the government for a particular year. A summary of the harm from the falsified and inflated Schedule C items for each of the 2020, 2021, 2022, and 2023 filing seasons is as follows:

Tax Returns Prepared by Tezeno in 2020:

g. During 2020, Tezeno prepared 525 federal income tax returns claiming Schedule C

items. 300 of the 525 returns were estimated to have falsified or inflated Schedule C items based on a misstatement rate of 57.14% as determined by the sample. The average misstatement resulting from each falsified Schedule C is $5,477.75. Accordingly, the estimated tax harm with respect to the falsified Schedule C items for returns filed by Tezeno in 2020 is $1,643,325.00.

Tax Returns Prepared by Tezeno in 2021:

h. During 2021, Tezeno prepared 192 federal income tax returns claiming Schedule C items. 121 of the 192 returns were estimated to have falsified or inflated Schedule C items based on a misstatement rate of 63.16% as determined by the sample. The average misstatement resulting from each falsified Schedule C is $2,357.75. Accordingly, the estimated tax harm with respect to the falsified Schedule C items for returns filed by Tezeno in 2021 is $285,287.75

Tax Returns Prepared by Tezeno in 2022:

i. During 2022, Tezeno prepared 246 federal income tax returns claiming Schedule C items. 219 of the 246 returns were estimated to have falsified or inflated Schedule C items based on a misstatement rate of 88.89% as determined by the sample. The average misstatement resulting from each falsified Schedule C is $4,297.94. Accordingly, the estimated tax harm with respect to the falsified Schedule C items for returns filed by Tezeno in 2022 is $941,248.86.

Tax Returns Prepared by Tezeno in 2023:

j. During 2023, Tezeno prepared 273 federal income tax returns claiming Schedule C items. 256 of the 273 returns were estimated to have falsified or inflated Schedule C items based on a misstatement rate of 93.75% as determined by the sample. The

average misstatement resulting from each falsified Schedule C is $4,387.33. Accordingly, the estimated tax harm with respect to the falsified Schedule C items for returns filed by Tezeno in 2023 is $1,123,156.48.

59. Tezeno's conduct also harms the United States because the I.R.S. must devote resources to identifying and examining the tax returns of Tezeno's customers; ascertaining their correct tax liabilities; collecting any taxes, interest, and penalties they owe; and recovering any tax refunds erroneously issued to them.

60. Tezeno's illegal conduct also harms honest tax return preparers. By preparing tax returns that unlawfully inflate their customers' refunds, Tezeno gains an unfair competitive advantage over tax return preparers who prepare returns in accordance with the law. Customers who are satisfied with the tax refunds that they receive but are often unaware of Tezeno's illegal return preparation practices, return to Tezeno for subsequent tax seasons.

61. Tezeno's misconduct harms the public at large by undermining public confidence in the administration of the federal tax system and encouraging non-compliance with internal revenue laws.

**Count I**
**Injunction under 26 U.S.C. § 7407**

62. The United States incorporates by reference the allegations in paragraphs 1 through 61.

63. Section 7407 of the Internal Revenue Code authorizes a District Court to enjoin a tax return preparer from, among other things, engaging in conduct subject to penalty under 26 U.S.C. § 6694 or § 6695, or engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, if the Court

finds that the preparer has engaged in such conduct and that injunctive relief is appropriate to prevent the recurrence of such conduct.

64. Additionally, Section 7407 provides that if the Court finds that a tax return preparer has continually or repeatedly engaged in such conduct, and that an injunction prohibiting only such conduct would not be sufficient to prevent that person's interference with the proper administration of the Internal Revenue Code, then the Court may enjoin the person from further acting as a tax return preparer.

65. Section 6694 of the Internal Revenue Code imposes a penalty on any tax return preparer who prepares any return or claim for refund with respect to which any part of an understatement of liability is due to (a) an unreasonable position of which the preparer knew or reasonably should have known, (b) a willful attempt to understate the liability, or (c) a reckless or intentional disregard of rules or regulations.

66. Tezeno has continually and repeatedly engaged in conduct subject to penalty under § 6694 by preparing federal income tax returns that understates his customers' liabilities based on unreasonable, unrealistic, and frivolous positions of which he knew or should have known, as well as his reckless disregard of rules or regulations.

67. Moreover, return preparers that do not identify themselves on returns they prepare for customers are subject to a penalty under 26 U.S.C. §§ 6695(b), (c). The IRS refers to return preparers that do not identify themselves as "ghost preparers."

68. Tezeno continually and repeatedly operates as a ghost preparer subject to penalty under 26 U.S.C. §§ 6695(b) and (c) because he does not identify himself as the return preparer on his customer's returns, and instead utilizes the PTIN assigned to his son.

69. Tezeno has continually and repeatedly engaged in fraudulent or deceptive conduct that substantially interferes with tax law administration by understating his customers' tax liabilities through false or inflated deductions and business expenses.

70. If the Court does not enjoin Tezeno, he is likely to continue engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, as well as engaging in other fraudulent or deceptive conduct that substantially interferes with tax law administration. Tezeno's preparation of returns claiming improper and inflated refunds has been continuing since at least 2019 and is widespread over many customers.

71. Injunctive relief is therefore appropriate under 26 U.S.C. § 7407.

72. The continuing and repetitive nature of Tezeno's misconduct demonstrates that a narrow injunction prohibiting only specific conduct would be insufficient to prevent him from continuing to interfere with the proper administration of the tax laws. Thus, the Court should permanently enjoin Tezeno from acting as a tax return preparer.

**Count II**
**Injunction under 26 U.S.C. § 7408**

73. The United States incorporates by reference the allegations in paragraphs 1 through 61.

74. Section 7408 of the Internal Revenue Code authorizes a District Court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 (among other provisions) if injunctive relief is appropriate to prevent the recurrence of such conduct.

75. Section 6701 of the Internal Revenue Code imposes a penalty on any person who aids or assists in the preparation or presentation of a federal tax return knowing (or having reason to believe) that it will result in an understatement of another person's tax liability.

76. Tezeno prepares federal tax returns for his customers that he knows (or has reason to believe) will be filed with the I.R.S. and that he knows will understate the customers' tax liabilities because the returns claim false or inflated deductions, expenses, credits, and income. Tezeno's conduct is thus subject to penalty under 26 U.S.C. § 6701.

77. If the Court does not enjoin Tezeno, he is likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701. Tezeno's preparation of returns claiming improper deductions has been continuing since 2019 and is widespread over many customers.

78. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

**Count III**
**Injunction under 26 U.S.C. § 7402(a)**

79. The United States incorporates by reference the allegations in paragraphs 1 through 61.

80. Section 7402(a) of the Internal Revenue Code authorizes a District Court to issue orders of injunction as may be necessary or appropriate for the enforcement of the internal revenue laws.

81. Through the actions described above, Tezeno has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws.

82. Unless enjoined, Tezeno is likely to continue to engage in such conduct and interfere with the enforcement of the internal revenue laws.

83. If Tezeno is not enjoined from engaging in such conduct, the United States will suffer irreparable injury by mistakenly providing federal income tax refunds to individuals not entitled to receive them, as well as expending time and resources to identify the individuals, determine their proper federal tax liabilities, and recover the erroneous refunds from them, if possible.

84. Tezeno could suffer no hardship from the injunction sought here that would outweigh the irreparable harm the United States will suffer if Tezeno is not enjoined. The injunction will merely prevent him from preparing tax returns for compensation, and not preclude him from seeking other non-tax related gainful employment.

85. Enjoining Tezeno from engaging in such conduct is in the public interest because an injunction, backed by the Court's contempt powers, is likely to stop Tezeno's illegal conduct and the harm it causes to his customers and the United States.

86. The Court should thus grant injunctive relief under § 7402(a) and bar Tezeno from preparing federal tax returns for others.

**Count IV**
**Disgorgement under 26 U.S.C § 7402(a)**

87. The United States incorporates by reference the allegations in paragraphs 1 through 61.

88. Section 7402 of the Internal Revenue Code authorizes a district court to issue orders, judgments, and decrees as may be necessary or appropriate for enforcing the internal revenue laws.

89. Tezeno's conduct, as set forth in paragraphs 1 through 61, substantially interferes with the enforcement of the internal revenue laws and has caused the United States to issue tax refunds to individuals that are not entitled to receive them, and to issue refunds larger than what taxpayers were entitled to receive. Tezeno has unjustly profited at the expense of the United States by charging customers fees for preparing and filing false returns that understated the customers' tax liabilities.

90. Tezeno is not entitled to these ill-gotten gains. But for Tezeno's conduct, the refunds issued would have been smaller, or no refunds would have been issued at all.

91. The Court should enter an order under 26 U.S.C. § 7402(a) requiring the Tezeno to disgorge to the United States the ill-gotten gains (in the form of fees subtracted from customers' tax refunds and of payments made by customers) that Tezeno received for preparing federal tax returns with false and/or inflated claims, including those that contain any fictitious Schedule C items.

**WHEREFORE**, the United States of America requests the following:

A. That the Court find that Tezeno has continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and/or 6695 and continually or repeatedly engaged in fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws;

B. That the Court find that injunctive relief under 26 U.S.C. § 7407 is appropriate to prevent the recurrence of such conduct and that a narrower injunction prohibiting only this specific misconduct would not be sufficient to prevent Tezeno's interference with the proper administration of the internal revenue laws;

C. That the Court find that Tezeno has engaged in conduct subject to penalty under 26 U.S.C. § 6701 and that injunctive relief under 26 U.S.C. § 7408 is appropriate to prevent the recurrence of such conduct;

D. That the Court find that Tezeno has engaged in conduct that substantially interferes with the enforcement of the internal revenue laws and that injunctive relief is necessary and appropriate to prevent the recurrence of such conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

E. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an injunction prohibiting Tezeno, and all those in active concert or participation with him, from directly or indirectly:

i. Acting as a federal tax return preparer or requesting, assisting in, or directing, the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than himself unless the entity for which a return is being prepared is an entity for which Tezeno is legally obligated to file a tax return;

ii. Preparing or filing, or directing or assisting in the preparation or filing of any federal tax returns, amended returns, and other federal tax documents and forms for anyone other than himself;

iii. Having an ownership interest in, working for (either as an employee or independent contractor), assisting, investing in, receiving fees or remunerations from, controlling, licensing, consulting with, or franchising any entity or business that prepares tax returns or represents clients before the Internal Revenue Service;

iv. Training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

v. Maintaining, assigning, holding, using, leasing, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

vi. Advising, counseling, or instructing anyone for compensation or otherwise regarding substantive tax law or the preparation of federal tax returns;

vii. Organizing or selling plans or arrangements that advise or encourage taxpayers to attempt to evade the assessment or collection of their correct federal tax;

viii. Engaging in any other activity subject to penalty under I.R.C. §§ 6694, 6695, 6700, or 6701;

ix. Advertising tax return preparation services through any medium, including print, online, and social media;

x. Referring any taxpayer to a tax preparation firm or to a tax return preparer, or otherwise suggesting that a taxpayer use any given tax preparation firm or tax return preparer;

xi. Selling, providing access, or otherwise transferring to any person or entity, other than the I.R.S. or counsel for the United States, a list of tax preparation customers that Tezeno generated by his tax return preparation activities;

xii. Using any business entity, to (a) assist in the preparation of a tax preparation business; or (b) receive federal refunds, whether directly from the I.R.S., or indirectly from A.O.N.I.A.P. , or any other tax refund processor;

xiii. Collecting or gathering Forms W-2 and Forms 1099 from taxpayers or from customers who want to have their federal income tax return prepared;

xiv. Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of

preparing or filing federal tax returns or other federal tax documents or forms for others or representing persons before the IRS;

xv. Working in the same office or office suite that also contains any part of a business whose activity at that office or office suite is to file, prepare, advise, or assist in the preparation of documents relating to a matter material to the internal revenue laws, including federal tax returns, amended federal tax returns, and related documents, for any person for compensation.

xvi. Engaging in conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws and from promoting any false tax scheme; and

xvii. Representing anyone before the IRS.

F. That the Court, pursuant to 26 U.S.C. §§ 7402(a), 7407, and 7408, enter an Order requiring Tezeno, within 30 days of entry of the Court's Order, to contact by U.S. mail and, if an e-mail address is known, by e-mail, all persons for whom he prepared federal tax returns, amended returns, or claims for refund during 2020, 2021, 2022, and 2023 (tax returns for 2019 through 2022 tax years), and to inform them of the injunction entered against him by sending each of them a copy of the Court's Order of Injunction with no other attachments unless approved by the Department of Justice in writing in advance, and to provide counsel for the government, within 45 days of the Order of Injunction, a sworn certificate stating that he has complied with this requirement;

G. That the Court enter an Order requiring Tezeno to disclose and surrender to the Secretary of the Treasury or her delegate any and all PTINs held by, assigned to, or used by Tezeno pursuant to 26 U.S.C. § 6109, and any EFINs held by, assigned to, or used by Tezeno;

H. That the Court enter an Order requiring Tezeno to provide the United States with a list of the names, Social Security numbers, addresses, phone numbers, and email addresses of each person for whom Tezeno prepared tax returns, other tax forms, or claims for refund after January 1, 2019;

I. That the Court enter an Order requiring Tezeno to prominently post a copy of the Court's Order of Injunction at Tezeno's place(s) of business, and prominently post for one year, on all social media accounts and websites used to advertise Tezeno's tax preparation services, a statement that he has been enjoined from the preparation of tax returns and a hyperlink to any press release regarding the Injunction that the Department of Justice may issue;

J. That the Court enter an Order requiring Tezeno to deliver a copy of the injunction to Tezeno's employees, contractors, franchisees, and vendors;

K. That the Court retain jurisdiction over this action to enforce any injunction entered against Tezeno;

L. That the Court order that Tezeno be required at his own expense to keep records of his compliance with the foregoing directives, which may be produced to the Court if requested, or to the United States at its request pursuant to paragraph M below;

M. That the Court order that the United States be entitled to conduct discovery to monitor Tezeno's compliance with the terms of any injunction entered against him;

N. That the Court, pursuant to 26 U.S.C. § 7402, enter an order requiring Tezeno to disgorge to the United States the ill-gotten gains (the amount of which is to be determined by the Court) that Tezeno received (in the form of fees subtracted from customers' tax refunds and in the form of upfront payments made by customers) since at least January 1, 2020 for the preparation of tax returns that contain false or inflated items that result in the

understatement of taxes, prepared by Tezeno or prepared by any tax preparation store franchised, owned, or managed by Tezeno, plus prejudgment interest thereon; and

O. That the Court grant the United States such other relief, including, costs, as is just and proper.

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ *Matthew R. Delgado*
MATTHEW R. DELGADO
Texas Bar No. 24116274
SDTX Federal ID No. 3805251
Special Trial Attorney, Tax Division
8701 S. Gessner Dr.
Houston, Texas 77074
Ph: (281) 721-7367
Fax: (855) 633-0095
Email: Matthew.Delgado@usdoj.gov

ATTORNEYS FOR THE UNITED STATES